**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

GEORGE DUGGAN,
            Appellant,

v.

DEPARTMENT OF DEFENSE,
            Agency.

DOCKET NUMBER
SF-1221-16-0150-B-2

DATE:  June 4, 2026

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

George Duggan, Newman, California, pro se.

Temple L. Wilson, Esquire, and John Norquist, Fort Belvoir, Virginia,
    for the agency.

**BEFORE**

Henry J. Kerner, Vice Chairman
James J. Woodruff II, Member

**FINAL ORDER**

The appellant has filed a petition for review of the remand initial decision, which denied his request for corrective action in this individual right of action (IRA) appeal.  Generally, we grant petitions such as this one only in the following circumstances:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  See 5 C.F.R. § 1201.117(c).

or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. We MODIFY the remand initial decision to find that disclosures (1)-(4) were protected by 5 U.S.C. § 2302(b)(8) and to clarify our analysis of disclosures (3)-(5). We VACATE the administrative judge's analysis of whether the extra proof requirement in 5 U.S.C. § 2302(f)(2) applies to the appellant and whether the appellant satisfied his burden in this regard. We FURTHER MODIFY the remand initial decision to find that the appellant proved that disclosure (1) was a contributing factor in personnel actions (1)-(3) and that disclosures (2)-(4) were a contributing factor in personnel action (3), but that the agency proved by clear and convincing evidence that it would have taken these personnel actions in the absence of the appellant's protected disclosures. Except as expressly MODIFIED in this regard, we AFFIRM the remand initial decision, still denying corrective action.

## DISCUSSION OF ARGUMENTS ON REVIEW

In the remand initial decision, the administrative judge found that the appellant did not prove his prima facie case because he did not make protected disclosures, or alternatively, that he did not prove contributing factor or the extra proof requirement in 5 U.S.C. § 2302(f)(2). *Duggan v. Department of Defense*, SF-1221-16-0150-B-2, Refiled Remand File (B-2 RF), Tab 71, Remand Initial Decision (RID). The appellant has filed a petition for review, but the agency has

not filed a response. Remand Petition for Review (RPFR) File, Tab 1. The appellant makes the following primary assertions on petition for review: (1) the administrative judge erred in his analysis of most of his disclosures; (2) the extra proof requirement in 5 U.S.C. § 2302(f)(2) does not apply to him; and (3) the burden should have shifted to the agency to prove by clear and convincing evidence that it would have taken the personnel actions against him absent his protected disclosures. *Id.*

The applicable legal standard

All the appellant's disclosures and alleged personnel actions in this matter predated the expansion of IRA appeal rights in the Whistleblower Protection Enhancement Act of 2012 (WPEA), Pub. L. No. 112-199, 126 Stat. 1465, which took effect on December 27, 2012. *See* WPEA, § 202; *Scoggins v. Department of the Army*, 123 M.S.P.R. 592, ¶ 7 (2016). Therefore, it is appropriate to apply pre-WPEA standards regarding the scope of this IRA appeal.[2] *Scoggins*, 123 M.S.P.R. 592, ¶ 7. Accordingly, the appellant must prove by preponderant evidence that he made a disclosure that was protected by 5 U.S.C. § 2302(b)(8) and that his disclosure was a contributing factor in the personnel actions taken against him.[3] *Id.*, ¶ 8. If the appellant meets his burden, then the Board shall order corrective action unless the agency proves by clear and

---

[2] To the extent that the administrative judge identified various WPEA provisions in the remand initial decision and the jurisdictional order, RID at 2-3, 6-8; *Duggan v. Department of Defense*, MSPB Docket No. SF-1221-16-0150-B-1, Remand File, Tabs 3, 21, a different outcome is not warranted. Any error in this regard is not prejudicial to the appellant's substantive rights and provides no basis for reversal of the remand initial decision. *Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984).

[3] The WPEA introduced an extra proof requirement regarding disclosures made during the normal course of duties. *Williams v. Department of Defense*, 2023 MSPB 23, ¶¶ 10, 12, 16; *see* 5 U.S.C. § 2302(f)(2). We need not resolve whether 5 U.S.C. § 2302(f)(2) applies here because, even if the extra proof requirement does not apply, the appellant is not entitled to corrective action. We vacate the administrative judge's analysis of whether the extra proof requirement in 5 U.S.C. § 2302(f)(2) applies to the appellant and whether he satisfied his burden in this regard.

convinging evidence that it would have taken the same personnel actions absent the protected disclosures. *Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶ 6; *Scoggins*, 123 M.S.P.R. 592, ¶ 8.

<u>We modify the remand initial decision to find that disclosures (1)-(4) were protected by 5 U.S.C. § 2302(b)(8).</u>[4]

A protected disclosure is a disclosure that an appellant reasonably believes evidences any violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.[5]  5 U.S.C. § 2302(b)(8)(A); *Linder v. Department of Justice*, 122 M.S.P.R. 14, ¶ 12 (2014).  A reasonable belief exists if a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the appellant could reasonably conclude that the actions of the Government evidence one of the categories of wrongdoing listed in section 2302(b)(8)(A).[6]  *Smith v. Department of the Army*, 2022 MSPB 4, ¶ 14 (citing *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999)); *Linder*, 122 M.S.P.R. 14, ¶ 12.  The appellant need not prove that the matter disclosed actually established one of the types of wrongdoing listed under section 2302(b)(8)(A); rather, the appellant must show that the matter disclosed

---

[4] The appellant does not challenge on review the administrative judge's following findings regarding his February 2008 disclosure to Congressional staff (disclosure (7)): (1) it was appropriate to apply collateral estoppel (issue preclusion) to the findings in an earlier IRA appeal that this disclosure was protected by 5 U.S.C. § 2302(b)(8) and he did not prove contributing factor regarding subsequent personal actions; and (2) alternatively, the appellant did not prove contributing factor regarding this disclosure.  RID at 49-51.  We affirm the remand initial decision in this regard.

[5] The WPEA's amendment to 5 U.S.C. § 2302(b)(8)(A), WPEA § 101(a), is immaterial to the outcome of this appeal.

[6] The Board may rely on an employee's experience in a particular field to find that a disclosure about wrongdoing in that field was reasonable.  *See, e.g.*, *Cooper v. Department of Veterans Affairs*, 2023 MSPB 24, ¶ 17 (finding an employee's disclosure about a violation of the Federal Acquisition Regulation reasonable considering her experience as a senior acquisitions professional).

was one which a reasonable person in his position would believe evidenced any of the situations specified in section 2302(b)(8). *Smith*, 2022 MSPB 4, ¶ 14.

*Disclosure 1: July 22, 2007*

On this date, the appellant, upon his return from audit field work, met with the Iraq Branch Office (IBO) Regional Audit Manager (RAM), the IBO Branch Manager, and his supervisor to discuss "the new direction of the L-3 labor review."[7] RID at 29; *see* B-2 RF, Tab 34 at 56 (the appellant's notes from this meeting). During this meeting, the IBO RAM reviewed the original L-3 audit request, asked how the appellant addressed each of the requested items, and reiterated that the audit was needed "before August 10, 2007." RID at 29; B-2 RF, Tab 34 at 56. The appellant told the IBO RAM that there were additional issues that he thought should be addressed, including "illiterate linguists causing wasted time and jeopardizing soldiers with bad translations" and "L-3 redeploying bad linguists around the country to unaware Army units." RID at 29; B-2 RF, Tab 34 at 56. The appellant stated that the IBO RAM "listened and understood it to be a problem" and said that they "could open up another audit to report on additional problems [] found at L-3." RID at 29; B-2 RF, Tab 34 at 56. The appellant protested further, but the IBO RAM "insisted that [they] issue the report by 8/10/07 and restrict [themselves] to addressing just the prior deficiencies." RID at 29; B-2 RF, Tab 34 at 56. The appellant asserted that he disclosed a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, and a substantial and specific danger to public health or safety. *Duggan v. Department of Defense*, MSPB Docket No. SF-1221-16-0150-B-1, Remand File (B-1 RF), Tab 19 at 5, Tab 23 at 10-11.

---

[7] "L-3" was also known as L3 Technologies or L-3 Communications holdings, which later acquired Titan Corporation and was sometimes referred to as such. RID at 16. The agency's contract with L-3 required L-3 to provide skilled linguists, and it identified various categories of linguists and qualifications. RID at 27. As described in the remand initial decision, in 2006, the agency conducted an audit that found deficiencies in timekeeping by L-3 linguists, and IBO was asked to perform a follow-up audit to evaluate remediation of the identified deficiencies. RID at 27-28.

The administrative judge found that the appellant did not prove that a disinterested observer could conclude that he disclosed a violation of the Generally Accepted Government Auditing Standards (GAGAS) or the Defense Contract Audit Agency (DCAA) Contract Audit Manual (CAM)[8] or that there was a disclosable external impairment.[9]   RID at 32.   In pertinent part, the administrative judge explained that the report was issued on August 6, 2007, and it specifically identified the scope of the follow-up audit as defined by the original assignment.  RID at 31-32.  The administrative judge acknowledged that the appellant wanted to take the assignment in a "new direction" but management instructed him to stay within the scope of the original assignment.  RID at 33. The administrative judge rejected the appellant's assertions that the pressure to issue a report on the follow-up audit was an "external impairment" that should have been disclosed under GAGAS and that the follow-up audit did not address all relevant information, such as overall contract compliance.  RID at 31-33. The administrative judge also found that the appellant did not disclose gross mismanagement because, among other things, there was a debate about the appellant's observations, management agreed that he raised important questions

---

[8] The administrative judge determined that both GAGAS and CAM constituted rules for the purposes of 5 U.S.C. § 2302(b)(8) because they were "established and authoritative standards that guide agency employees in conducting their work."   RID at 31. Neither party challenges the administrative judge's finding in this regard on review.

[9] The GAGAS stated that "[a]udit organizations must be free from external impairments to independence," which "may restrict the work or interfere with auditors' ability to form independent and objective opinions, findings, and conclusions."  B-2 RF, Tab 30 at 48; RID at 19.   External impairments can include "improperly limit[ing] or modify[ing] the scope of an audit," "unreasonable restrictions on the time allowed to complete an audit or issue the report," and threats to replace an auditor "over a disagreement with the contents of an audit report."   B-2 RF, Tab 30 at 48-49; RID at 19-20.  The CAM likewise discussed external impairments and offered some examples, including procurement or contracting officers' interference in the scope and character of an audit, denial of access to sources of information, external interference in the assignment of personnel to the audit task, actions by contractors significantly influencing the auditor's judgment, and unreasonable restrictions on the time allowed to "competently complete the audit assignment."  B-2 RF, Tab 29 at 97; RID at 20.

but ultimately decided to limit its efforts to the specific assignment, and it was reasonable for the agency to do so. RID at 33.

On review, the appellant asserts that DCAA management "created the new direction of the L-3 audit" and "redirect[ed] [him] to eliminate audit steps and preliminary findings of illiterate linguists in the field." RPFR File, Tab 1 at 6. He suggests that DCAA upper management redirected IBO in this regard because it was "invested in L-3's prior contract performance" and "bid protests." *Id*. at 6-7. He states that management knew his opinion that permitting L-3 to deploy noncompliant contract linguists in Iraq was a present danger to the troops, and he asserts that DCAA management "lied about issues [that he] found with illiterate linguists as being 'economy and efficiency' issues." *Id*. at 8. Finally, he speculates that "DCAA management at the highest levels was being pressured by L-3 or [the Department of Defense] to report favorably about L-3's linguists in IBO's 2007 labor review being conducted by the appellant so L-3 could get back a billing holdback of $25 million and favorably compete . . . for the very big linguist follow-on contract." *Id*. He reasserts that, during the July 22, 2007 meeting, he disclosed wrongdoing that violated GAGAS,

endangered the warfighter and mission, and displayed gross mismanagement and a gross waste of funds.[10]  *Id.*

These assertions are not persuasive.  Gross mismanagement is more than de minimis wrongdoing or negligence; it means a management action or inaction that creates a substantial risk of significant adverse impact upon the agency's ability to accomplish its mission.[11]  *Salazar v. Department of Veterans Affairs*, 2022 MSPB 42, ¶ 24.  We do not find that the appellant's disagreement with his managers regarding the scope of the follow-up L-3 audit constituted a substantial risk of significant adverse impact upon the agency's ability to accomplish its mission, particularly when his managers indicated that they could open another audit on the other issues.  Moreover, the appellant's speculation on review regarding the agency's motives does not rise to the level of preponderant

---

[10] The administrative judge found that the appellant made a nonfrivolous allegation of an abuse of authority and a gross waste of funds in this disclosure, B-1 RF, Tab 26 at 3, but he did not discuss whether the appellant met his burden of proof on the merits in the remand initial decision.  The appellant does not challenge the administrative judge's failure to make such findings in this regard on review.  RPFR File, Tab 1 at 8.  We modify the remand initial decision to find that the appellant's description and testimony about the July 22, 2007 meeting does not constitute proof by preponderant evidence that he had a reasonable belief that he disclosed an abuse of authority or a gross waste of funds.  *See, e.g.*, *Collier v. Small Business Administration*, 2024 MSPB 13, ¶ 5 (holding that an abuse of authority occurs when there is an arbitrary or capricious exercise of power by a Federal official or employee that adversely affects the rights of any person or that results in personal gain or advantage to the Federal official, employee, or some preferred other persons); *Van Ee v. Environmental Protection Agency*, 64 M.S.P.R. 693, 698 (1994) (stating that a gross waste of funds constitutes a more than debatable expenditure that is significantly out of proportion to the benefit reasonably expected to accrue to the government).

[11] We modify the remand initial decision to address the administrative judge's statement that gross mismanagement refers to management decisions that are more than merely debatable.  RID at 4 (citing *Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 10 n.3 (2015)).  Although the administrative judge referred to such a requirement, it does not appear that he found that the appellant's disclosures were not protected solely on that basis.  RID at 33, 43, 48.  Instead, he found that the appellant did not satisfy his burden to prove that he disclosed an action or inaction which creates a substantial risk of significant adverse impact upon the agency's ability to accomplish its mission.  *Id.*

evidence. *See Duncan v. Department of the Air Force*, 115 M.S.P.R. 275, ¶ 9 (2010), *aff'd*, 674 F.3d 1359 (Fed. Cir. 2012).

We have also considered the appellant's assertion that he disclosed a violation of GAGAS because (1) the follow-up audit report did not state that it violated contract requirements or modified the GAGAS audit scope statement to state that contract compliance was not reviewed, and (2) the report did not state that there was an external impairment to DCAA independence or that DCAA had a lack of audit independence. RPFR File, Tab 1 at 7-8. The administrative judge addressed and rejected these assertions in the remand initial decision,[12] RID at 30-33, and we discern no error with his conclusions in this regard. The appellant's disagreement with management's decision to stay within the scope of the original assignment does not constitute preponderant evidence that he disclosed a violation of GAGAS or CAM therein.

However, the administrative judge did not address in the remand initial decision the appellant's assertion that he disclosed a substantial and specific danger to public health or safety, which he raises again on review. B-1 RF, Tab 19 at 5; B-2 RF, Tab 70 at 6; *see* RPFR File, Tab 1 at 8. We do so now. In determining whether a disclosed danger is sufficiently substantial and specific to warrant protection under the whistleblower protection statutes, the Board must consider (1) the likelihood of harm resulting from the danger, (2) when the alleged harm may occur, and (3) the nature of the harm, i.e., the potential consequences. *Chambers v. Department of the Interior*, 602 F.3d 1370, 1376 (Fed. Cir. 2010) (internal citations omitted); *Wilson v. Department of Veterans*

---

[12] In pertinent part, the administrative judge noted that it was unclear what the appellant meant by a lack of audit independence, particularly since the Mid-Atlantic Branch Office conducted an audit that found deficiencies and then conducted a follow-up audit with the IBO's assistance, the appellant did not identify any constraints on how he was supposed to evaluate specific issues in the original assignment or any time constraints in that regard, and he did not prove facts that would lead a disinterested observer to conclude that there was either an external impairment or a lack of audit independence in the follow-up audit. RID at 33; B-2 RF, Tab 34 at 128-29.

*Affairs*, 2022 MSPB 7, ¶ 38. The U.S. Court of Appeals for the Federal Circuit has explained that "specific allegations or evidence either of actual past harm or of detailed circumstances giving rise to a likelihood of impending harm" are needed to demonstrate that a disclosure evidences a substantial and specific danger to public health or safety. *Chambers*, 602 F.3d at 1376.

As noted above, in this disclosure, the appellant stated that he "spoke at length" about "illiterate linguists . . . jeopardizing soldiers with bad translations" and the danger of "L-3 redeploying bad linguists around the country to unaware Army units." B-2 RF, Tab 34 at 56. To explain the nature of the danger of illiterate linguists, the appellant testified about a situation in which a sergeant major was trying to keep his unit *away from* a particular mosque and the interpreter "botched up the translation" and led the unit *to* the mosque, which put them in the middle of a firefight. B-2 RF, Tab 65-4, Hearing Recording (testimony of the appellant); *see* B-1 RF, Tab 27 at 5 (stating, in a declaration made under penalty of perjury, that he observed a "frustrated and angry platoon . . . loudly arguing with their sergeant major to get rid of their interpreter because he had mistakenly led them that day into a firefight which could have wiped out the whole platoon").[13] We find that the appellant satisfied his burden to prove by preponderant evidence that he had a reasonable belief in a substantial and specific danger to public health or safety and that his disclosure was therefore protected by 5 U.S.C. § 2302(b)(8).

*Disclosures 2-5: October 2-3 and 27, 2007*

In an email and teleconference on October 2, 2007, the appellant alleged that he warned the IBO RAM and Mid-Atlantic Branch Office (MABO) Branch Manager about the danger of L-3 linguists to the troops and mission and how IBO needed to respond to concerns about botched intelligence translations

---

[13] We cannot determine from the record if the appellant's testimony and declaration described the same incident or two separate incidents. We need not resolve this issue to adjudicate this matter.

(disclosures (2) and (3)). B-1 RF, Tab 19 at 5; B-2 RF, Tab 34 at 253-54 (email), 262-63 (notes of the teleconference); RID at 36-38. On October 3, 2007, the appellant sent an email to the IBO RAM and a supervisor about the new L-3 audit, in which he asserted, among other things, that IBO could do a better job than MABO because the request originated out of Iraq, IBO (specifically, the appellant) had already devoted resources to evaluate the linguists and had "unique knowledge" and expertise, he was better at performing statistical audit tests, and IBO would not have a learning curve (disclosure (4)). B-2 RF, Tab 34 at 265-66; RID at 38. The appellant asserted that, in these communications, he disclosed a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, abuse of authority, and a substantial and specific danger to public health or safety. B-1 RF, Tab 19 at 5, Tab 23 at 11-12. The administrative judge found that, in disclosures (2)-(4), the appellant made a nonfrivolous allegation that he disclosed an abuse of authority and a gross waste of funds. B-1 RF, Tab 26 at 3.

On October 27, 2007, the appellant asserted that, during a conference with the IBO RAM, he was pressured to drop his findings on the L-3 linguists, but the IBO RAM supported him the following morning in continuing the audit (disclosure (5)). B-1 RF, Tab 19 at 5-6; B-2 RF, Tab 34 at 282-83. He asserted that he disclosed a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, and a substantial and specific danger to public health or safety. B-1 RF, Tab 19 at 5-6, Tab 23 at 12-15. The administrative judge found that he nonfrivolously alleged that he disclosed a violation of law, a gross waste of funds, and an abuse of authority. B-1 RF, Tab 26 at 2-3.

In the remand initial decision, the administrative judge found that the appellant did not disclose a violation of GAGAS or other policy that would qualify as a rule under 5 U.S.C. § 2302(b)(8). RID at 43. Regarding disclosure (2) (the October 2, 2007 email), the administrative judge rejected the appellant's assertion that there would be an external impairment under GAGAS if

L-3 exercised pressure to get money that had been withheld or to renew the contract; instead, the administrative judge determined that there was a potential, but unrealized, risk. *Id.* Indeed, the administrative judge noted that, after the appellant left Iraq, IBO issued a significant Statement of Condition and Recommendation (SOCAR),[14] and L-3 did not get the contract renewal. *Id.* The administrative judge considered the appellant's assertion that it was gross mismanagement for the agency to take time to come around to his view, but he found that the delay of a few months did not constitute gross mismanagement. *Id.*

Regarding disclosure (2), the appellant asserts on review that he had a reasonable belief that there was a GAGAS violation. RPFR File, Tab 1 at 11. He also challenges the administrative judge's conclusion that a 3-month delay did not constitute gross mismanagement. *See id.* at 11-12 ("It doesn't take a genius to understand many a warfighter died or was wounded in Iraq relying on mistranslated intelligence on the battlefield. . . . Three months is a lot of time for mayhem."). Regarding disclosures (3)-(5), the appellant asserts that the administrative judge did not specifically analyze these disclosures or explain why they were not protected. *Id.* at 12. He asserts generically that, in all of his L-3 disclosures, he had a reasonable belief that DCAA management violated GAGAS requirements, permitted a gross waste of funds by paying linguists who did not meet contract requirements, and exercised gross mismanagement in the manner in which it audited and ignored illiterate L-3 linguists, which presented a clear and present danger to the warfighter and mission. *Id.*

We agree with the administrative judge that the appellant did not prove by preponderant evidence that, in disclosure (2), he had a reasonable belief that he disclosed a violation of GAGAS or gross mismanagement for the reasons stated in the remand initial decision. Although not specifically challenged by the appellant, for the same reasons discussed in disclosure (1), we find that he did not

_____

[14] SOCAR is the auditor's report to the contractor identifying questionable costs before issuing the final report. RID at 41 n.20.

prove that he had a reasonable belief that he disclosed an abuse of authority or a gross waste of funds.

The administrative judge did not separately analyze disclosures (3)-(5), and it is unclear if he intended his analysis of disclosure (2) to apply to disclosures (3)-(5). We modify the remand initial decision to clarify our analysis of these disclosures. Because the content of disclosures (3)-(5) is generally the same as the content of disclosure (2), we also find that the appellant did not prove, in disclosures (3)-(5), that he had a reasonable belief that he disclosed a violation of GAGAS, gross mismanagement, a gross waste of funds, or an abuse of authority in these communications.

We further modify the remand initial decision to find that appellant disclosed a substantial and specific danger to public health and safety in disclosures (2)-(4). For example, in his October 2, 2007 email (disclosure (2)), he expressed his desire to "supplement [the earlier labor review] with our significant findings as quick[ly] [and] accurately [as] possible to ultimately save . . . lives [that were] in real jeopardy from inadequate translators in Iraq," and he "designed tests in the sample to capture deficiencies like illiteracy and improper movement of illiterate linguists by L-3." B-2 RF, Tab 34 at 253. During the October 2, 2007 meeting, the appellant stated that "people are in jeopardy because of incompetent linguists." *Id.* at 262. In the October 3, 2007 email disclosure, the appellant stated, among other things, that "the users of L-3 service have deep problems about its services," a "good fraud risk assessment should note that the claim of illiterate linguists ha[s] been out there for over two years and yet according to MABO the [Procuring Contracting Officer] is unaware of these problems," and "[o]ther parties . . . know something is wrong with a system that allows underperforming linguist[s] in Iraq." *Id.* at 265-66. Similar to our analysis of disclosure (1), we conclude that the appellant proved that he disclosed a substantial and specific danger to public health and safety in disclosures (2)-(4). However, in contrast to disclosures (2)-(4), the appellant

made no assertions of a substantial and specific danger to public safety in his October 27, 2007 communication (disclosure (5)). *Id.* at 282-83. Therefore, we find that disclosure (5) is not protected.

*Disclosure 6:  October 31, 2007*

This disclosure involved an audit of a dining facility (DFAC) contract. The appellant sent an email to his supervisor, the IBO Branch Manager, the IBO RAM, the Deputy Regional Director, and the Regional Director, entitled "DFAC Reality Check," in which he made the following statements, among others: (1) certain Central Region personnel on a teleconference were uninformed about "basic information"; (2) it was "no coincidence that [IBO] discovered [certain DFAC] over-billings in Iraq because these over-billing disclosures could not have happened without questioning [contractor] subject matter experts in Iraq"; (3) "IBO exists for a legitimate reason"; (4) "all these DFAC audits should be done in Iraq for this reason"; (5) the "suggestion that [IBO] not issue SOCARs . . . is without historical context because [IBO has] and can quickly act on inconsistencies in [contractor] responses; (6) the contractor uses a "divide and conquer strategy," whereby it gives inconsistent information to IBO and the Central Region; (7) it was "more important to systematically and effectively audit the material DFACs in Iraq" rather than rush the process; and (8) IBO "need[s] to agree upon an audit strategy that considers the overlap in questioned costs from over-billing and over-pricing." B-2 RF, Tab 34 at 353-54; RID at 45. The appellant concluded his email by saying, "I have enjoyed my work here at IBO, but I just needed to say this to set the record straight and point out a problem." B-2 RF, Tab 34 at 354; RID at 45. The appellant asserted that he disclosed a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, abuse of authority, and a substantial and specific danger to public health or safety. B-1 RF, Tab 19 at 6, Tab 23 at 14-15. The administrative judge found that the appellant made a nonfrivolous allegation of an abuse of authority and gross mismanagement. B-1 RF, Tab 26 at 4.

In the remand initial decision, the administrative judge noted that the appellant testified that he was essentially disclosing that DCAA was "wasting time" and management engaged in gross mismanagement by "chasing their own tails." RID at 48 (discussing the appellant's testimony). The administrative judge found that a disinterested observer with knowledge of the essential facts would know that the agency eventually agreed with much of what the appellant was complaining about, and the appellant was essentially complaining that the agency took too long to assign or conduct work in a way that he thought was best. *Id.* The administrative judge concluded that this disclosure did not constitute gross mismanagement. *Id.*

On review, the appellant reiterates that he disclosed gross mismanagement.[15] RPFR File, Tab 1 at 13-14. He cites to an opinion from the Court of Federal Claims, which he describes as "one of the biggest DFAC refunds [he] or anyone was able to obtain, and a good sample of DCAA gross mismanagement," and he asserts that the judge called the IBO audit process "erratic" and described the appellant as the "most knowledgeable" auditor. *Id.*; B-2 RF, Tab 34 at 460-556.

The appellant's assertions do not warrant a different outcome. Notably, the administrative judge referenced the opinion of the Court of Federal Claims in the remand initial decision. RID at 47 (noting that the court "quoted the appellant favorably"); *see* B-2 RF, Tab 34 at 460-556. Moreover, the appellant's email, which largely involved his opinion on the "turf war" between the Central Region and IBO about which office should perform the DFAC audits, B-2 RF, Tab 66-1, Hearing Recording (testimony of the appellant), did not constitute a reasonable

---

[15] Although appellant does not challenge the administrative judge's failure to evaluate whether he reasonably believed that he disclosed an abuse of authority or the other categories of wrongdoing, we modify the remand initial decision to find explicitly that his disagreement with the way that the agency handled the dining facility contract, as expressed in this communication, did not constitute a disclosure of any of the other categories of wrongdoing set forth in 5 U.S.C. § 2302(b)(8).

belief of a substantial risk of significant adverse impact upon the agency's ability to accomplish its mission. *See, e.g.*, *Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 10 n.3 (2015) (finding that the appellant's policy paper was not a disclosure of gross mismanagement, among other things, because his recommendations reflected his opinion of the best way to restructure the Mineral Management Service).

*Conclusion*

Because we find that disclosures (1)-(4) were protected by 5 U.S.C. § 2302(b)(8), we now turn to whether the appellant proved contributing factor.

We find that the appellant proved by preponderant evidence that disclosure (1) was a contributing factor in personnel actions (1)-(3) and disclosures (2)-(4) were a contributing factor in personnel action (3).[16]

There are two ways to evaluate contributing factor. The most common way is the knowledge/timing test, in which an appellant can prove that his disclosure was a contributing factor in a personnel action through evidence that the official taking the personnel action knew of the disclosure and took the personnel action within a period of time, like 1-2 years, such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Scoggins*, 123 M.S.P.R. 592, ¶ 21; *Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶¶ 18, 21 (2015); *see* 5 U.S.C. § 1221(e)(1). If the appellant

---

[16] The administrative judge identified the following 10 personnel actions: (1) failure to receive an annual promotion appraisal on July 30, 2007; (2) failure to receive an annual superior performance award on July 30, 2007; (3) involuntary transfer from Iraq on December 3, 2007; (4) a downgraded annual performance appraisal, dated July 30, 2008; (5) revocation of telework agreement on July 30, 2008; (6) a downgraded annual promotion appraisal, dated July 30, 2008; (7) failure to receive an annual superior performance award on July 30, 2008; (8) a downgraded performance evaluation "July 30, 2009[,] but dated September 29, 2009"; (9) failure to receive an annual superior performance award on July 30, 2009; and (10) a downgraded promotion appraisal "July 30, 2009, but dated 25 September 2009." B-1 RF, Tab 19 at 6; RID at 52-65; *see, e.g.*, B-2 RF, Tab 34 at 160-63 (promotion appraisals for 2008 and 2009), 168-72 (performance appraisal from December 2, 2007, to June 30, 2008), 400 (November 2, 2007 email regarding the appellant's transfer from Iraq), Tab 39 at 39-40 (performance appraisal from July 1, 2008, to August 11, 2009).

fails to satisfy the knowledge/timing test, then he can prove contributing factor through other evidence, such as that pertaining to the strength or weakness of the agency's reasons for taking the personnel action, whether the disclosure was personally directed at the proposing or deciding officials, and whether these individuals had a desire or motive to retaliate against the appellant. *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 65.

On review, the appellant asserts as a general proposition that the "timeline of events would establish a contributing factor for all personnel actions." RPFR File, Tab 1 at 17. We disagree. For example, disclosure (1) occurred on July 22, 2007, more than 2 years before personnel actions (8)-(10). Also, disclosures (2) through (4), which occurred in October 2007, were made *after* alleged personnel actions (1) and (2); thus, they could not have been a contributing factor in those personnel actions. *See Rumsey v. Department of Justice*, 120 M.S.P.R. 259, ¶ 27 (2013) (finding that disclosures made after the agency took the personnel action at issue could not have been a contributing factor in such an action). We now turn to the personnel actions to evaluate contributing factor.

*Personnel action (1): failure to receive an annual promotion appraisal on July 30, 2007*[17]

In the remand initial decision, the administrative judge stated that he should not have accepted jurisdiction over this personnel action because a failure to issue a promotion appraisal is not a personnel action as described in 5 U.S.C. § 2302(a). RID at 54. In pertinent part, the administrative judge noted that, in *Kochanoff v. Department of the Treasury*, 54 M.S.P.R. 517, 520 (1992), the Board held that an allegedly false evaluation of the appellant's qualifications for promotion, unlike a performance appraisal under 5 U.S.C. chapter 43, does not constitute a personnel action. RID at 54. Alternatively, the administrative judge considered the failure to issue a promotion appraisal on the merits. RID at 55-58. The administrative judge noted that the appellant testified that the IBO RAM was, "for the most part . . . the decisionmaker" in IBO, and therefore was likely to have issued, or not issued, the promotion appraisal. RID at 55; B-2 RF, Tab 65-2, Hearing Recording (testimony of the appellant); *see* B-2 RF, Tab 67-4, Hearing Recording (testimony of the Peninsula Branch Office (PBO) Branch Manager)

---

[17] The administrative judge explained that, until sometime around 2009, the agency issued promotion appraisals along with a performance appraisal, the promotion appraisals were scored on approximately 30 questions, and the promotion appraisals were used to evaluate candidates for competitive promotions. RID at 52. The administrative judge credited the testimony of various agency managers that these promotion appraisals were not cumulative and only the most recent one would be sent to a hiring panel. RID at 52-53; *see Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (stating that the Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so). On review, the appellant submits a July 21, 2008 email from the Western Region RAM to various agency managers, which he asserts shows that the administrative judge was wrong to credit agency officials over him about the cumulative use of promotion appraisals. RPFR File, Tab 1 at 15, 20. Evidence offered for the first time on petition for review merely to impeach a witness's credibility is not generally considered new and material. *Bucci v. Department of Education*, 42 M.S.P.R. 47, 55 (1989). However, even if we consider this email, it does not state that any prior promotion appraisal information would be used cumulatively. Moreover, it does not constitute sufficiently strong reasons not to defer to the administrative judge's credibility determinations. *Haebe*, 288 F.3d at 1301.

(stating that the IBO would have been responsible for the appellant's 2007 promotion appraisal). Importantly, the IBO RAM passed away at some point before the appellant filed his 2015 Office of Special Counsel (OSC) complaint. RID at 55.

In evaluating the appellant's prima facie case, the administrative judge noted that there was a laches problem due to the appellant's 8-year delay in filing his OSC complaint. RID at 56. In pertinent part, the administrative judge determined that the agency produced what it had that was responsive to the appellant's discovery requests, the agency did not act negligently in failing to preserve materials from the IBO RAM, and it did not act with an intent to deprive the appellant of material for litigation that it either knew about or reasonably anticipated. *Id.* The administrative judge considered other evidence, including a declaration, made under penalty of perjury, from a human resources specialist, which stated that the agency did not have any records for the appellant involving 2007 performance evaluations or appraisals or records from 2007 "related to employees working in . . . Iraq." B-1 RF, Tab 38 at 5. The administrative judge also considered the appellant's assertion that he "must have" brought up the failure to issue a promotion appraisal to the PBO Branch Manager at the time of most of these events and her successor. RID at 57-58. However, the administrative judge noted that the PBO Branch Manager testified that she was unaware of the failure to issue a promotion appraisal in 2007, and both the PBO Branch Manager and her successor (who took over in October 2007) testified that they did not know why the 2007 promotion appraisal was not issued. *Id.* The administrative judge considered the demeanor of these witnesses during the hearing, and he found them credible in this regard. RID at 58.

On review, the appellant disagrees with the administrative judge's determination that a promotion appraisal was not a personnel action under 5 U.S.C. § 2302(a)(2)(A). RPFR File, Tab 1 at 15. For the reasons set forth in the remand initial decision, including the administrative judge's demeanor-based

credibility determinations, we agree with the administrative judge that a promotion appraisal is not a "performance evaluation under chapter 43," as defined in 5 U.S.C. § 2302(a)(2)(A)(viii), and thus, it is not a personnel action under the whistleblower protection statutes.

For the following reasons, even if we determined that a promotion appraisal was a personnel action, and we proceeded to evaluate contributing factor and the agency's clear and convincing burden, a different outcome is not warranted. We can decide contributing factor based on the existing record. The only disclosure that predated this personnel action is disclosure (1). The IBO RAM was present during the July 22, 2007 meeting described in this disclosure, and the failure to issue the promotion appraisal occurred within a week or so thereafter. We find that the appellant proved contributing factor under the knowledge/timing test with respect to the IBO RAM.

However, the PBO Branch Manager testified that she did not have any knowledge of the appellant's disclosures or complaints about the audits or the supervisors in Iraq. B-2 RF, Tab 67-4, Hearing Recording (testimony of the PBO Branch Manager). Moreover, the appellant did not call his temporary PBO supervisor as a witness. B-2 RF, Tab 27 at 6, Tab 44 at 5. Therefore, we find that the appellant did not prove contributing factor under the knowledge/timing test involving the PBO Branch Manager or temporary supervisor. Even if we consider the alternative method for proving contributing factor, a different outcome is not warranted. In the absence of any actual or constructive knowledge by these officials, we cannot conclude that the PBO Branch Manager and/or the temporary supervisor had a desire or motive to retaliate against the appellant based on the disclosures identified in this appeal. *See Geyer v. Department of Justice*, 70 M.S.P.R. 682, 693 (1996) (noting that disclosures of which an agency official has neither actual nor constructive knowledge cannot contribute toward any retaliatory motive on her part), *aff'd per curiam*, 116 F.3d 1497 (Fed. Cir. 1997) (Table). The burden is on the appellant to prove contributing factor by

preponderant evidence, *Wadhwa v. Department of Veterans Affairs*, 110 M.S.P.R. 615, ¶ 12, *aff'd per curiam*, 353 F. App'x 435 (Fed. Cir. 2009), and we find that he has not met his burden under this alternate theory related to the PBO Branch officials.

We have considered the appellant's assertion that it was inappropriate for the administrative judge to apply laches because, among other things, he filed a motion to impose sanctions based on the agency's "lies" about the reasons it could not find documents that he requested during discovery. RPFR File, Tab 1 at 18 (citing B-2 RF, Tab 12). However, we need not resolve the laches issue because we are addressing the appellant's claims on the merits.[18]

*Personnel action (2):   failure to receive an annual superior performance award on July 30, 2007*

In the remand initial decision, the administrative judge noted that the July 2007 nonreceipt of a performance award is a personnel action under 5 U.S.C. § 2302(a)(2)(ix), but the appellant did not show who was responsible for issuing it. RID at 58. In pertinent part, the administrative judge noted that it was likely that IBO was the responsible office. *Id.* To the extent that PBO would have been the office to provide a retroactive award, the administrative judge applied issue preclusion to the findings that the PBO Branch Manager and the appellant's temporary supervisor did not know about the appellant's disclosures in Iraq; thus, he did not prove contributing factor under the knowledge/timing test. *Id.* Even if the administrative judge conducted an alternative contributing factor analysis, the agency did not have records from that long ago, he could not evaluate the strength of the agency's evidence and doing so would be prejudicial to the agency, and the

---

[18] Because the appellant did not comply with the administrative judge's orders on discovery and he did not arrange to meet and confer with the agency following the February 15, 2024 status conference and before his filed his motion for discovery sanctions, we conclude that the administrative judge did not abuse his discretion in denying the appellant's motion. B-2 RF, Tab 20; *see, e.g.*, *Leseman v. Department of the Army*, 122 M.S.P.R. 139, ¶ 6 (2015) (recognizing that, absent an abuse of discretion, the Board will not reverse an administrative judge's determination regarding sanctions).

appellant deliberately waited until 2015 to file his appeal, which warranted the application of laches. RID at 58-59; B-1 RF, Tab 38 at 5.

Other than his general assertion regarding the administrative judge's decision to apply laches, RPFR File, Tab 1 at 18, the appellant does not specifically challenge the administrative judge's findings or conclusion regarding this personnel action. However, similar to our analysis of the 2007 promotion appraisal, we find that disclosure (1) was the only disclosure that predated this personnel action, the appellant proved contributing factor under the knowledge/timing test as it relates to the IBO RAM, but he did not prove contributing factor under either theory related to any agency official in the PBO Branch office.

*Personnel action (3): involuntary transfer from Iraq on December 3, 2007*

In the remand initial decision, the administrative judge discussed the appellant's December 2007 transfer from Iraq and the form email that was sent to him by the IBO Branch Manager, which explained that, due to decreased work demand, they were modifying tours for employees who already served their 6-month tours and there was only one case where work could not be "readily transferred." RID at 59-62; B-2 RF, Tab 34 at 400. The administrative judge noted that the appellant testified, among other things, that there was plenty of workload, more auditors were needed, there were discussions about keeping him so he could continue to work on the L-3 audit, and one auditor remained after he left. RID at 60. The administrative judge noted that the decision to keep auditors in Iraq was made by IBO, primarily the RAM. *Id.*

As discussed above, the agency did not have any records regarding employees who worked in Iraq or were sent home from Iraq in 2007. RID at 16; B-1 RF, Tab 38 at 5. In pertinent part, the administrative judge considered the alternative contributing factor analysis, he noted that he would have to balance "what conflicting and disputed evidence remains after the passage of so much

time," and he found that the evidence after such a long period of time was "too muddled to evaluate." RID at 61. The administrative judge determined that the agency was not on notice that it should have retained such records when the appellant contacted OSC in 2015, eight years later, and it would be inconsistent with laches to hold that the agency should have retained these records and infer that these records would have been favorable to the appellant. *Id.* Thus, the administrative judge did not make specific findings on contributing factor.

Other than the generic assertions discussed above, the appellant does not specifically challenge the administrative judge's analysis of this personnel action. As noted above, the IBO RAM was involved in the meeting described in disclosure (1), and he was either the recipient of emails or present for the teleconference as set forth in disclosures (2)-(4). B-2 RF, Tab 34 at 56, 253-54, 262-63, 265-66. The decision to transfer the appellant out of Iraq occurred a few weeks to a few months after these disclosures. Therefore, we conclude that the appellant proved contributing factor under the knowledge/timing test related to the IBO RAM. For the same reasons discussed above, however, we conclude that the appellant did not prove that any PBO Branch official had knowledge of his Iraq disclosures; thus, he has not proven contributing factor under either theory with respect to those employees.

> *Personnel actions (4), (5), and (7): downgraded performance appraisal, revocation of telework agreement, and failure to receive an annual superior performance award, all of which occurred on July 30, 2008*

The administrative judge noted, and the appellant conceded, that he raised these personnel actions in an earlier Board appeal, and the administrative judge found that they were barred by claim preclusion (res judicata) because the above disclosures could have been, but were not, raised therein. RID at 20-22, 62; *see* B-2 RF, Tab 70 at 10 ("I concede [that] the 2008 personnel actions[,] revocation of telework privileges, unsuccessful performance appraisal, and superior performance award[,] were part of my earlier Case B claim."); *see also*

*Duggan v. Department of Defense*, MSPB Docket No. SF-1221-10-0159-W-1, Appeal File (0159 AF), Tab 42, Initial Decision (0159 ID). If the personnel actions were not barred by claim preclusion, the administrative judge alternatively found that issue preclusion (collateral estoppel) applied with respect to the knowledge of the PBO Branch Manager and his temporary supervisor about the Iraq disclosures. RID at 63. The administrative judge noted that the appellant testified that he did not tell the PBO Branch Manager about his disclosures or other complaints in Iraq, and he rejected the appellant's assertion that the PBO Branch Manager "must have" known about his disclosures because, among other things, managers talk to each other. *Id.* The administrative judge concluded that the appellant did not prove that it was more likely than not that the PBO Branch Manager knew about his disclosures. *Id.*

We decline to apply issue preclusion to the PBO Branch Manager's and the temporary supervisor's knowledge of disclosures (1)-(4). *See, e.g.*, *Kroeger v. U.S. Postal Service*, 865 F.2d 235, 239 (Fed. Cir. 1988) (stating that the Board has discretion to decline to apply collateral estoppel). Additionally, we need not address the administrative judge's statements about the applicability of claim preclusion. Importantly, as noted above, the record in this matter reflects that the PBO Branch Manager testified that she did not have any knowledge of the appellant's disclosures or complaints about the audits or the supervisors in Iraq. B-2 RF, Tab 67-4, Hearing Recording (testimony of the PBO Branch Manager). Moreover, the appellant did not call the temporary supervisor as a witness. B-2 RF, Tab 27 at 6, Tab 44 at 5. Therefore, he has not proven knowledge under the knowledge/timing test.

Even if we consider the alternative method for proving contributing factor, a different outcome is not warranted. Regarding the strength of the agency's evidence, the appellant filed a grievance regarding the 2008 unacceptable performance appraisal and loss of telework privileges, which the Western Region RAM sustained. RID at 62; B-2 RF, Tab 38 at 53-73. The favorable decision on

the appellant's grievance undermines the strength of the initial rating and subsequent decision to revoke telework. However, the appellant's 2007 Iraq disclosures were not directed at the PBO Branch Manager or the temporary supervisor. In the absence of any actual or constructive knowledge by these officials, we cannot conclude that the PBO Branch Manager or the temporary supervisor had a desire or motive to retaliate against the appellant based on the disclosures identified in this appeal. *See Geyer*, 70 M.S.P.R. at 693. We have considered the other factors, but we conclude that the appellant has not proven contributing factor under the alternative theory related to these personnel actions.

> *Personnel actions (6) and (10): Downgraded annual promotion appraisals, July 30, 2008, and "July 30, 2009, but dated 25 September 2009."*

Like personnel action (1), the administrative judge determined that the Board lacks jurisdiction over personnel actions (6) and (10) involving promotion appraisals. RID at 64. Alternatively, the administrative judge found that the appellant "raised" these personnel actions in the 0159 appeal and that they were barred by claim preclusion.[19] *Id.* (citing 0159 ID at 12-14). The administrative judge also found that the PBO Branch Manager and his temporary supervisor in 2008, whom the administrative judge determined had a role in these promotion appraisals, testified in the 0159 appeal that they did not know about the appellant's disclosures and the testimony of these agency officials was entitled to preclusive effect.[20] *Id.* Finally, the administrative judge noted that the PBO Branch Manager testified that she did not know about the appellant's disclosures in Iraq, so he would find that the appellant did not prove contributing factor. *Id.*

---

[19] We disagree with the administrative judge that, as a factual matter, the 2008 and 2009 promotion appraisals were raised in the 0159 appeal. Rather, it appears that the appellant challenged therein a downgrade of an August 2003 promotion appraisal. *See, e.g.*, 0159 AF, Tab 41 at 7 (asserting, in his closing brief, that his August 2003 downgraded promotion appraisal constituted a personnel action); 0159 ID at 13-14 (discussing the testimony of the appellant's second-level supervisor in 2003 regarding his review of the promotion appraisal). We modify the remand initial decision in this regard.

For the same reasons as set forth in our evaluation of personnel action (1), we agree with the administrative judge that a promotion appraisal is not a personnel action. Alternatively, even if we determined that it was a personnel action, the appellant has not met his burden to prove contributing factor. Although we decline to apply issue preclusion, the PBO Branch Manager testified that she did not have knowledge of the appellant's disclosures, and the appellant did not call the temporary supervisor as a witness. Therefore, he has not proven contributing factor under the knowledge/timing test. Moreover, in the absence of any actual or constructive knowledge on the part of the PBO Branch Manager or the temporary supervisor, we do not find that there was a motive to retaliate, and we conclude, as we did above, that the appellant did not satisfy the alternative contributing factor analysis related to these personnel actions.

> *Personnel actions (8) and (9): Downgraded annual performance evaluation, "July 30, 2009[,] but dated September 29, 2009," and failure to receive an annual superior performance award, July 30, 2009*

In the remand initial decision, the administrative judge found that the appellant did not prove knowledge or contributing factor. RID at 64-65. In pertinent part, the administrative judge credited the testimony of the RAM that he did not know about the appellant before assuming responsibility for the PBO and he did not know about any of the appellant's disclosures in Iraq. RID at 65. The administrative judge rejected as speculative the appellant's assertion that all managers talk and they must have known about his disclosures, and he noted that the appellant's speculation was inconsistent with the sworn testimony of such agency officials. *Id.* The appellant does not specifically challenge the administrative judge's analysis in this regard on review. Therefore, we affirm the

---

[20] We understand the administrative judge to mean that the administrative judge's findings in the 0159 appeal on knowledge were entitled to preclusive effect under issue preclusion or collateral estoppel. However, for the reasons described above, we decline to apply collateral estoppel to this finding.

administrative judge's findings regarding contributing factor related to these personnel actions.

*Conclusion*

For the reasons stated herein, we find that the appellant met his burden to prove that disclosure (1) was a contributing factor in the IBO RAM's decision to take or not to take personnel actions (1)-(3) and disclosures (2)-(4) were a contributing factor in the IBO RAM's decision to take personnel action (3). We also find that the appellant did not prove contributing factor involving any PBO Branch official under either theory. Because the appellant only proved contributing factor regarding the IBO RAM and personnel actions (1)-(3), we now evaluate whether the agency has proved by clear and convincing evidence that it would have taken these personnel actions absent the appellant's protected disclosures.

<u>We find that the agency proved by clear and convincing evidence that it would have taken personnel actions (1)-(3) in the absence of the appellant's protected disclosures.[21]</u>

In determining whether an agency has met its burden, the Board will consider all relevant factors, including the following ("*Carr*" factors): (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who do not engage in such protected activity, but who are otherwise similarly situated. *Soto*, 2022 MSPB, 6, ¶ 11; *see also Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). The Board does not view the *Carr* factors as discrete elements, each of which the agency must prove by clear and convincing evidence, but rather weighs these factors together to determine whether the evidence is clear and convincing as a whole.

---

[21] Clear and convincing evidence is the measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established. 5 C.F.R. § 1209.4(e). It is a higher standard than preponderant evidence. *Id.*

*Soto*, 2022 MSPB 6, ¶ 13. The *Carr* factors are nonexclusive, meaning other relevant facts may be considered. *Miller v. Department of Justice*, 842 F.3d 1252, 1257 (Fed. Cir. 2016).

> *Personnel action 1: Failure to issue a promotion appraisal on July 30, 2007*[22]

We have considered the strength of the agency's evidence. For example, there was testimony that promotion appraisals were typically completed at the end of the performance cycle, when the performance appraisals were being done. B-2 RF, Tab 67-4, Hearing Recording (testimony of the PBO Branch Manager). The PBO Branch Manager explained that the performance appraisal looks at the employee's past work, whereas the promotion appraisal (sometimes called the promotion potential) is the supervisor's estimation of the employee's promotion potential going forward. *Id.*

The record reflects that the appellant received from the PBO an overall Exceeds Fully Successful rating for the period covering July 1, 2006, to June 30, 2007, and Outstanding appraisals from the IBO for the period covering February 15 to June 30, 2007, and July 1 to December 1, 2007. B-2 RF, Tab 34 at 138-45, 174-77. Because the IBO RAM had passed away at the time the appellant filed his OSC complaint in 2015, and the agency no longer had any records related to the 2007 "performance evaluations or appraisals" or "records related to employees working in . . . Iraq," B-1 RF, Tab 38 at 5, there was no direct or circumstantial evidence as to why the 2007 promotion appraisal was not issued. The record also reflects that the appellant received promotion appraisals prior to and following the 2007 appraisal year. B-2 RF, Tab 34 at 159-63. In the absence of any evidence to explain why the agency did not issue a promotion

---

[22] The administrative judge concluded that it would be prejudicial under laches to require the agency to attempt to prove that it would not have issued the 2007 promotion appraisal despite any protected disclosures. RID at 58. Because we decline to address laches, we are deciding this issue on the merits.

appraisal to the appellant in or around July 2007, we conclude that this factor weighs slightly in the appellant's favor.

Regarding motive to retaliate, we have found that "[t]hose responsible for the agency's performance overall may well be motivated to retaliate even if they are not directly implicated by the disclosures . . . as the criticism reflects on them in their capacities as managers and employees." *Wilson*, 2022 MSPB 7, ¶ 65 (quoting *Whitmore v. Department of Labor*, 680 F.3d 1353, 1370 (Fed. Cir. 2012)); *Smith*, 2022 MSPB 4, ¶¶ 28-29 (same). We acknowledge the appellant's assertion that, because his disclosures implicated agency management, the IBO RAM had a motive to retaliate against him. RPFR File, Tab 1 at 17; B-2 RF, Tab 70 at 12. Importantly, there is no direct evidence of the IBO RAM's intent because, as noted above, he passed away and the agency no longer had any documentation related to the promotion appraisal. However, there is ample circumstantial evidence that the IBO RAM did not have any motive to retaliate— personal or professional—against the appellant. Indeed, the IBO RAM was the reviewer and concurred in the appellant's Outstanding appraisals during the relevant time frame. *See, e.g.*, B-2 RF, Tab 34 at 142-45, 174-77.

The earlier appraisal covered the time from February 15, to June 30, 2007. B-2 RF, Tab 34 at 142-45. In that appraisal, the appellant was described as "perform[ing] at a very high level of competence on some very complicated issues," "[his] audit steps are now being used as the basis for several other highly visible audits here at IBO," and his work on the L-3 linguist audits was "performed outstandingly and resulted in positive feedback for both the [Field Audit Office] and [the appellant]." *Id.* at 144. This appraisal also reflected that the appellant's request for a 90-day extension in Iraq was approved. *Id.* at 145. The latter appraisal covered the time period from July 1 to December 1, 2007, and included the timeframe when the agency should have issued the 2007 promotion appraisal to the appellant. *Id.* at 174-77. In that appraisal, the appellant was rated Outstanding in all of the elements related to his audit performance work,

with the appraisal noting that the appellant worked on "the most difficult assignments" involving L-3 and that his work "resulted in the contractor admitting it had mistakes in its submissions to the [G]overnment," which "led to an early alert notification that has resulted in the contractor adhering to the requirements in the contract." *Id.* at 176. Given his consistently Outstanding ratings during his time in IBO and the overlap with the relevant time frame for issuing the 2007 promotion appraisal, it strains credulity that the IBO RAM would have concurred on such appraisals and, at the same time, harbored any motive to retaliate against the appellant. Therefore, we find that this *Carr* factor weighs in the agency's favor.

Regarding similarly situated individuals, the agency did not provide evidence responsive to this *Carr* factor. We conclude that this factor does not weigh in the agency's favor. *See, e.g.*, *Smith*, 2022 MSPB 4, ¶ 30; *see also Siler v. Environmental Protection Agency*, 908 F.3d 1291, 1299 (Fed. Cir. 2018) ("[In the] absence of relevant comparator evidence, the third *Carr* factor cannot favor the government."); *Miller*, 842 F.3d at 1262 ("[T]he court may not simply guess what might happen absent whistleblowing. The burden lies with the Government.").

Under the unusual circumstances of this case, particularly the appellant's delay in filing his OSC complaint and Board appeal and the resulting absence of relevant documentation to explain why a promotion appraisal was not issued, we find that our analysis of the three *Carr* factors does not provide for adequate consideration of whether the agency proved by clear and convincing evidence that it would have not issued the 2007 promotion appraisal in the absence of disclosure (1). We have considered the totality of the circumstances. *See Smith v. General Services Administration*, 930 F.3d 1359, 1365 (Fed. Cir. 2019) (stating the U.S. Court of Appeals for the Federal Circuit has held that the *Carr* factors are "nonexclusive"); *Miller*, 842 F.3d at 1257 (same). Based on the appellant's stellar performance appraisals during the relevant time frame, and the

fact that he received promotion appraisals both prior to and following the 2007 appraisal year, we are left with a firm belief that the agency's failure to issue to the appellant a promotion appraisal in July 2007 was not due to reprisal for disclosure (1).

*Personnel action 2: failure to receive an annual superior performance award on July 30, 2007*

Here, too, disclosure (1) was the only disclosure that predated this personnel action. We find that the strength of the agency's evidence favors the appellant, particularly because of his consistently high ratings and the fact that a performance award would appear to be directly tied to his performance appraisal. Our analysis of the agency's motive to retaliate and its treatment of similarly situated nonwhistleblowers, discussed above in relation to the 2007 promotion appraisal, applies to this personnel action as well. Ultimately, we have considered the totality of the circumstances. *Smith*, 930 F.3d at 1365; *Miller*, 842 F.3d at 1257 (same). We are left with a firm belief that the failure to issue to the appellant a performance award in July 2007 was not taken in reprisal for disclosure (1).

*Personnel action 3: involuntary transfer from Iraq on December 3, 2007*

On November 2, 2007, the appellant was advised by email that the agency had to make "some staffing adjustments primarily due to the fact that the demand work [was] not coming in currently at the rate [that was] planned," and, in order "to balance the available staff with [their] current audit workload," the agency "need[ed] to modify some of [the] extended tours" for some employees. B-2 RF, Tab 34 at 400. The agency noted that "[a]ll of the personnel involved [were] on extended tours" and "already served out their original six month tour as originally committed." *Id.* The agency explained that, to decide which extended tours would be modified, the agency considered the type of work that auditors were currently performing and whether that work could be reasonably performed by

someone else, and the agency determined that there was only case in which work could not be transferred to another auditor. *Id.* The agency stated that it identified six individuals who only had a few months left on their extended tour and the decision was "based primarily on the longevity of the extended tour." *Id.* The appellant testified that the email was a "form" email that was sent to him and other auditors who were sent home at the same time. B-2 RF, Tab 66-4, Hearing Recording (testimony of the appellant). As noted above, the agency stated in a declaration made under penalty of perjury that it had no records from 2007 "related to employees working in or sent home from Iraq." B-1 RF, Tab 38 at 5.

Regarding the strength of the agency's evidence, the agency's stated reasons for transferring the appellant and other auditors out of Iraq—decreased workload, the transferability of work to another auditor, and the longevity of an employee's tour—constitute strong evidence in favor of the agency's action. We have considered the appellant's assertion that sending him home was like "benching Steph Curry," B-2 RF, Tab 65-5, Hearing Recording (testimony of the appellant), which we understand to mean that the agency's decision to transfer him was a poor choice. We have also considered the appellant's citation to a Wikipedia entry for the Gansler report, which he stated contradicted the agency's rationale for transferring him out of Iraq.[23] B-2 RF, Tab 70 at 12 (discussing B-2 RF, Tab 34 at 402-04). The administrative judge discussed this evidence in the remand initial decision. RID at 61 n.28. In pertinent part, the administrative judge took official notice of the full report and determined that it did not support the appellant's position that there needed to be more auditors. *Id.* However, even if the report suggested that the agency should deploy more auditors generally, it was not relevant to determining whether the appellant, in particular, should have remained in Iraq. *Id.* We discern no error with the administrative judge's

---

[23] Although it is the agency's burden to prove by clear and convincing evidence that it would have taken the same personnel actions absent the appellant's protected disclosures, we have considered the appellant's assertions in our analysis of these issues.

reasoning in this regard. On the whole, we find that the limited evidence in the record favors the agency on this *Carr* factor.

Regarding motive to retaliate, in addition to the circumstantial evidence discussed above, regarding his performance appraisals during this time frame, the record reflects that the appellant's Iraq tour was extended three times, including a 90-day extension around July 2007, which was around the time that he made disclosure (1). B-2 RF, Tab 66-4, Hearing Recording (testimony of the appellant); *see* B-2 RF, Tab 34 at 145. Importantly, the appellant testified that the agency "extended [him] for 35 days after [his] whistleblowing." B-2 RF, Tab 66-4, Hearing Recording (testimony of the appellant). Here, too, it strains credulity to find that the IBO RAM harbored any retaliatory animus against the appellant when he extended his tour several times, including after he made protected disclosures. We therefore find that this *Carr* factor favors the agency.

Regarding similarly situated individuals, the administrative judge noted that an auditor who came to Iraq when the appellant was leaving requested to extend his deployment but that the request was denied because there were enough people coming in the next group. RID at 60. Additionally, the administrative judge noted that the appellant testified that at least two other auditors who had been in Iraq with him returned around the same time. *Id.* However, there was no information about whether any other auditors were whistleblowers. For the same reasons as discussed above, we find that this *Carr* factor cannot weigh in the agency's favor.

Based on our review of the relevant *Carr* factors, we find that the agency proved by clear and convincing evidence that it would have transferred him out of Iraq absent his protected disclosures.

*Conclusion*

For the reasons stated herein, we conclude that the agency proved by clear and convincing evidence that it would have taken personnel actions (1)-(3) even

in the absence of disclosures (1)-(4). Accordingly, the appellant is not entitled to corrective action.

The appellant's remaining assertions do not warrant a different outcome.

In the remand initial decision, the administrative judge found that the Board does not have jurisdiction over 2009 and 2010 promotions for which the appellant was not selected because, among other things, the appellant did not raise these actions with OSC and did not object to the administrative judge's findings on the personnel actions before him, which did not include these nonselections. RID at 53-54. The administrative judge alternatively found that the appellant did not present specific evidence on these promotions. RID at 54. On review, the appellant challenges the administrative judge's conclusion that he did not raise the agency's failure to promote him in 2009 and 2010, stating that he gave "everything" to OSC, but OSC was "so disorganized" that "it mixed up [his] cases." RPFR File, Tab 1 at 16. Importantly, the appellant did not object to the administrative judge's recitation of the personnel actions at issue in this appeal, which did not include any alleged nonselections in 2009 and 2010. RID at 53-54; B-1 RF, Tab 26 at 4-5, Tab 27 at 4-7. Because the appellant did not challenge the administrative judge's summary of the relevant personnel actions in this regard, we need not analyze whether the appellant presented any specific evidence regarding these nonselections.

The appellant also asserts on review that the administrative judge did not give any weight to Congressional reports, reports from the Government Accountability Office (GAO) and the Department of Defense, and news articles that DCAA "was failing in its most core responsibilities," and that the administrative judge failed to consider that DCAA did not have an approved peer review of its quality control system as required by GAGAS. RPFR File, Tab 1 at 18-19. These assertions are not persuasive. First, the administrative judge identified GAO and other media reports, but he noted that they were not entitled to any weight because he did not have authority in an IRA appeal to determine

whether the agency was doing a good job. RID at 52 n.23. The administrative judge noted that evidence of broader issues may be relevant to whether there was an institutional motive to retaliate, but he determined that it would be inappropriate to evaluate the entire DCAA management structure for the purposes of adjudicating this appeal. *Id.* We discern no error with the administrative judge's analysis in this regard. Indeed, the appellant does not assert that any of these reports or articles discuss wrongdoing by any agency officials identified in the remand initial decision as being involved in any alleged personnel actions, which could be relevant to a potential motive to retaliate under *Carr* factor 2. Moreover, the remand initial decision reflects that the administrative judge referenced an August 26, 2009 Memorandum, which notified employees that the agency's quality control system had expired and required them to use a modified GAGAS statement in this regard. RID at 20; B-2 RF, Tab 34 at 713-14.

We have also considered the appellant's claim of administrative judge bias. RPFR File, Tab 1 at 19. In making a claim of bias or prejudice against an administrative judge, a party must overcome the presumption of honesty and integrity that accompanies administrative adjudicators. *Oliver v. Department of Transportation*, 1 M.S.P.R. 382, 386 (1980). Additionally, an administrative judge's conduct during the course of a Board proceeding warrants a new adjudication only if the administrative judge's comments or actions evidence "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Bieber v. Department of the Army*, 287 F.3d 1358, 1362-63 (Fed. Cir. 2002) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). The appellant has presented no such evidence.

**NOTICE OF APPEAL RIGHTS**[24]

The remand initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

---

[24] Since the issuance of the remand initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on

race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[25] The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

---

[25] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

*Gina K. Grippando*

FOR THE BOARD: _____

Gina K. Grippando
Clerk of the Board

Washington, D.C.